In this case, Burr v. Safco, the two issues that arise in this case relate to the two issues that we've already discussed extensively this morning and have been briefed a number of times. Maybe we can do this a little more quickly. That's what I suggest, Your Honor. I'm not going to go over the law. I would like to frame the issue. This is essentially just a legal issue that is before the court. The district court held that as a matter of law, only the contracting party could take an adverse action. And this court need not even look into the facts if it believes that the district court was wrong as a matter of law. The facts, however, do inform and give examples of where an insurance company that is not the issuing company is actually the company that takes the adverse action, but the court doesn't even need to review the factual record to that extent and can resolve this case initially just on the statutory construction issue. You're saying that if the ruling that only a signatory can be liable under the statute, if we said that were incorrect, that's all we'd have to say? You would not, at least for this case, have to look further into the facts. You could decide it, I believe, just based on if you ruled that only the signatory company could take the adverse action, there's no need to review the facts. I thought you were saying that if we were saying that it's incorrect that only the signatory can do it. If it's incorrect, you should remand to the district court for further proceedings against the proper party. Just to note a couple of the- You don't have to decide who is the proper party? It would help me if you could just give a little outline about who it is. Sure. This is a case involving Safeco Insurance Company of America. They are the overarching lead or operating company in this case. They, for efficiency purposes, and we don't believe it's to avoid the Fair Credit Reporting Act. There's not a conspiracy here. But for efficiency purposes, they have all the employees and make the underwriting decisions by directing the consumers into the subsidiary companies. And that is at the point at which we believe the adverse action occurs. In this case, plaintiff Shannon Massey had tenant insurance through Safeco Illinois, and it's undisputed in the record that she did not receive the best rates available, at least from the Safeco family of companies, based in part on her credit information. Charles Burr applied for automobile insurance with Safeco, well, initially with American States and later with Safeco Oregon. I'm going to focus on the Safeco Oregon policy. With respect to that second automobile policy, it's also undisputed that he was charged more for that insurance, in fact, $700 more, based in part on his credit information. With that regard to his driving record. But with Safeco Oregon, Safeco Oregon could have charged him the other amount, or it would have gone to a different company. Which one? The way the record reads is that the determination of placing someone in a tier or a company, and they use both those terms together as I read the record, determines the price. So if you're placed in Safeco Oregon, it's not clear where else you would be placed. It's clear that you didn't get the best rate. I believe if you put all the facts together in the record, you would have been in a different company. Well, it would matter for purposes of the school-you-can-sue problem, whether it's a question of being placed with one company or another with regard to breaching the parent company or the operating company, or whether it is a determination of a rate within whatever company is actually issuing the insurance. It could be. The key issue is whether you were charged more for insurance. I understand. It may matter. That's the key liability question, but in terms of who you consume, does it matter, for example, if the facts here turned out to be that the whole of the $700 increase that he was charged, or additional amount of money, was within Safeco Oregon. In other words, that Safeco Oregon itself would have charged him the greater amount or the lesser amount, but he wouldn't have been kicked from another company. Does that matter in terms of who the proper defendant is? If he had a better available rate from Safeco Oregon, Safeco Oregon could have taken the adverse action there. Okay, but also true under that situation of Safeco Insurance of America is also true. If they considered the consumer's credit and placed him within policy from a company that had higher prices instead of another company. Suppose they didn't do that. If they never did that and the only consideration was for Safeco Oregon, and within Safeco Oregon he had a better price, if the overarching operating company never made the initial decision, then I think it's true. The overarching operating company, though, did, as in the first case, set all the parameters and made a decision as to what he was going to be charged. No, I agree. You're right. Can I ask you a question? The overarching company could be liable. In this particular case, the remaining defendants were dismissed on the overriding issue, generally the statutory one. The only defendant, is this correct, that was dismissed on the parties question was the Safeco, you know, the general company. I think Safeco America is. Safeco America. That's the only one that's at issue on this question. Correct. We're not here on whether the subsidiaries are proper defendants. Well, we are not on the proper defendant issue. That's what I'm talking about. Yes, but. The proper, no. Yes, you're right. You're correct. The proper defendant issue, the only question is whether Safeco America or whatever it is, the overall company, whether that was properly dismissed because it was not the signatory. Correct. The other issues relate to the new application. All right. So all we have to decide is whether the company that makes the classification is a proper defendant. Correct, Your Honor. Okay. One additional issue that hasn't been discussed much today that is raised in this case is the participant liability argument. We think that's a red herring. We're not asking for participant liability. We're just asking if the statute be applied to the conducted issue. The other issue that's constantly raised as a red herring issue is this agency issue. The district court held that somehow being a contract agent for another party may absolve responsibility for conduct under the Fair Credit Reporting Act. We don't think that's the case. There's no contract agency-based defense in the Fair Credit Reporting Act. You apply the statute to the conducted issue. I'm just curious. This is one thing that bothers me about your basic direct liability theory. Could you sue the individual who made the decision, the person? If the individual has the discretion to go get your credit, ask a consumer reporting agency for your credit report, get back the information. Why does discretion matter? The statute doesn't say anything about discretion. I'd say if the agent is a gatekeeper and represents a number of people and the agent makes the decision to put you into one company as opposed to the other, I think that agent is liable for pushing you into the more expensive. What about the person who is the underwriting employee at Safeco Insurance in America who makes the decision? Why can't you sue them? Well, as an initial matter, of course, we haven't. I'm just trying to understand what you're saying. Well, if you had an independent agent, I think you might be able to. With a captured agent, I'm not sure the answer to that question.  Thank you. Thank you, Your Honor. May it please the Court, Lisa Lear on behalf of the Safeco defendants. I'd like to, if I may for a moment, jump back to the first issue that we had this morning, just to provide some additional information about some questions that were asked. One of the big issues that came up is the question about how you deal with this language, when is insurance applied for, and how you can handle dealing with the language, the increase in the charge for insurance, where it is defendant's position that you're dealing with a situation here where the statute we contend never provided for this type of analysis of increase that the FTC and the plaintiffs are urging here, and that, in fact, the FACTA amendments support that. The question was raised about the difference between the definitions of adverse action for credit and for insurance, and the statute for credit turns to the Equal Credit Opportunity Act, and if you look at, and you'll find at page ADD 24 of the red brief in the Spano case, the language is set out there for the Equal Credit Opportunity Act, the definition of adverse action, and it really is quite similar to the definition for adverse action in FCRA. It deals with denial, revocation, change in the terms of an existing credit arrangement, or refusal to grant credit in substantially the amount or terms requested, which there's your applied for part of it. It almost tracks, not quite word for word, but the actions that are considered adverse actions track between the Equal Credit Opportunity Act and FCRA, and when you couple that with the fact that when FCRA was originally enacted, you didn't have a distinction between credit and insurance. You had adverse action was not defined separately, and you had the same standards applying to both credit and insurance. The change was made in 1996 when Congress had to deal with the fact that some courts had construed a distinction between how you deal with adverse action for credit under the Equal Credit Opportunity Act and the Fair Credit Reporting Act. When the separate distinctions were set out, you have the provisions in 1681A, K1B, that go through the four different types of adverse action that are specific, the ones that deal with credit, insurance, employment, and government benefits, and then you have the catch-all phrase, which we do not believe applies. But if you follow through the history of this and then you look at what happened with FACTA, Congress stepped in and said there is an issue here where we're dealing with a best rate type situation, and not only did Congress create a new provision that applied only to credit, they essentially said, by the way they did it, that adverse action was never defined to include the best rate situation. Congress did not modify the definition of adverse action for credit. It created an entirely new provision requiring a different notice, providing that the notice you have to give in that best rate situation does not satisfy the adverse action notice requirement, and also making clear that failure to comply with that new notice provision does not give rise to statutory damages. It's only subject to enforcement through administrative proceedings. Essentially what's happening here is plaintiffs in the FTC are trying to impose a standard on the insurance company that is stronger than what Congress even imposed on credit and provide a penalty that Congress didn't apply to credit in a situation where it's never been applied to insurance in the first place. If you want to focus on the specific language of the FCRA statute and the meaning of applied for, the question was raised about how you deal with this idea of the increase in credit, increase in the charge or the premium for insurance applied for. And as discussed in the brief, there's a couple of examples of situations where you might have an increase in credit applied in, I'm sorry, increase in the charge for insurance applied for. One of them is specific to this case. Mr. Burr applied for an automobile policy and was given a policy with a premium. The insurance company ordered consumer reports, and we're not talking now just about credit reports but consumer reports that deal with your driving history and your license history. And it was determined that he had some moving violations. Do you see any reason why Congress would have written a statute that made that distinction as to initial? I'm sorry? That made that distinction as to an application for initial insurance? In other words, what you're really saying is if we do something behind the scenes and never give you the initial quote, then the fact that we're doing the exact same calculation doesn't have to be reported as an adverse action. But if we make a mistake and tell you something and then change it, then we do. Why would that matter in terms of the purposes of the statute? The purpose of the statute is to give people notice that you have taken action against them. It's our position that you haven't taken, you haven't, you have to look at the actions that Congress defined as being adverse. And the one that we're focused on, this whole case is about the premiums that these people were charged. I'm not going to spend a lot of time talking about. In terms of his interest in finding out if he has an incorrect bad credit rating out there that's influencing his insurance rates, why would it matter that you first told him the rate would be X and then said, oh, whoops, I'm wrong because of your credit rating, it's Y, as opposed to never made that first erroneous representation but made exactly the same calculations in your back room? I think you have to turn back to, we're not saying that Congress made a distinction between what you do under the table and what you do above what you might have accidentally told somebody. The point that we're making is that Congress set out four very specific kinds of conduct that constitute taking adverse action. The denial, the, you go through the list, and the one that we're focused on is the increase in the charge for insurance. And the question is, when do you increase something? What the district court held is you have to have something there to increase. What you're dealing with in all these cases is a situation where you take a whole bunch of factors, put them together, and determine a premium. There isn't something that exists that you're then changing. All these factors come into it. The problem that you have with the way the statute is worded and what the insurance companies have done is that they're applying, they go straight through and apply the language. If you look at page 34 of the September 11, 2002, deposition, the question was asked of Barbara Steeves, the representative for Safeco, about, you know, why is this the way you handle this? Why do you give a notice when there's a denial? Why do you give a notice but not in this situation? And she said, we sit down, we look at the statute. This is what the statute says. We deem this to be an offer. We're making an offer. We're not undoing something. We're not denying you something. We're making you an offer. This is what we're going to offer you. If we recognize that we have to give notice, if we deny insurance, if we decline to offer it, if we change your premium, we change the terms of your policy, we cancel or revoke your policy, but in this situation we're making an offer. It's also important to recognize that while it's true that this use of the automated computer system for getting insurance scores is very new, insurance companies have been using credit reports for 30 years. That's why this exists in the statute back in 1970. This has always been something that insurance companies have done. It's just that now they can do it much quicker and they have access to far more information through the credit reporting services and the use of insurance scores. But this has been going on for 30 years and there's never been an approach to insurance companies saying you're doing this wrong. Suddenly all these insurance companies are being held to a standard that simply was not applied before. There's an additional source for the discussion about how you deal with this language if you're going to parse out the various provisions in the statute, the four types of conduct and then in connection with insurance applied for. And if you look at the amicus curiae briefs that was filed in the Hartford v. Rausch case that was filed by the insurance industry, there's discussion at pages 9 and 10 that talk about how you deal with that language. And I won't go through all that now because the time is short. I do want to hit a couple of points about the Safeco companies and the question of how you deal with which entity. Well, you've got about a minute and a half left. Deal with which entity is responsible here. This situation is unique from the others for a couple of reasons. First of all, the initial application comes through an independent agent. This isn't a situation where you have a captive agent that's going out and doing these things. This initial application comes through an independent agent. You have a group of companies that have agreed to work together. They all offer various different types of policies, but they have an employee sharing agreement. All employees, there is what's called a lead company, but only in name only. Safeco America is a lead company. It technically employs all the employees for payroll purposes, but all of the members of the Safeco property and casualty companies jointly share all employees. They jointly pay all salaries, all expenses, the whole thing. And the understanding is that anybody who is working for it on a specific policy through a specific entity is working for that entity at that time. So you have a system where the independent agent refers, sends the policy or the application to a Safeco entity through his own processes. It arrives there. It's run through the computer, and the person who's doing the underwriting work is working for the company that it's come through. It is that company that then issues the policy or does an issue. The other thing to keep in mind here is to go back to- Is there not a decision made somewhere at the operating company as to which of the affiliated companies the policy will be written by? There is a system that's set up through the computer system. Somebody set up the computer system. They made a decision about what goes into them. They made a decision about what the criteria are. It has been established. And who did all that? That is done through the- Technically, it's Safeco America in the sense that they technically employ all the people, but these programs are set up as the property and casualty companies as a unit initially set up the program. Once it's set up, the independent agents, the policy comes through them. Whichever, whether it's a Safeco company or however many other companies they represent, it comes in through the system where they've already directed it toward a specific entity. At that point, the person working on the application and doing the underwriting work that's come in is working for that specific entity at that time. But how do you know? There has to be at some point a path division as to the fact that this individual is going to be directed towards X instead of Y. When and how is that happening? By whom is it done? It's initially done through the computer program, but this gets back to the very question that we have at the beginning here about how do you decide which entity is responsible. It's the issuing insurer that actually charges the premium. The fact that a decision is made behind the door, behind the walls, whatever it is. Nothing has happened to this insured until he's issued a policy and charged a premium. At that point- What's happened is that he's been denied the ability to get an insurance policy from a different company that would have charged him less. Who did that? It's done through a computer system. It's done through a program. But the problem that you have is that you have an entity that is capable of giving adverse action notice if adverse action is taken. At this point, it becomes very hard to separate these two issues because you've got to question whether it constitutes adverse action to charge an initial premium that may be higher because of information in a credit report, but there was nothing to increase it from. All right. We've given you an extra two minutes. All right. Thank you. Thank you. Just a couple brief points. With respect to the fair, I think it's the FACTA, Fair Accurate Credit Transaction Act, the court doesn't even need to consider that act. It's post. It's not even legislative history. It's history that came up well after the fact. And one of the reasons for that act, if the court decides to consider it, is that the definition of adverse action under the ECOA, the Equal Credit Opportunity Act, I believe, never included an increase in any credit for insurance. So that is one aspect of why that FACTA addressed credit transactions only. But, again, it refers to a separate statute dealing with credit transactions that isn't relevant to your decision. With respect to Your Honor's question about who takes the action, at the very least, the action is taken by Safeco Insurance Company of America when it directs the consumer into the Safeco Oregon policy. I have no further comments unless you have any questions. Thank you, Judge. The case just recorded will be submitted. The court will adjourn to the day. All rise. This court for this session has adjourned. Thank you.
judges: Reinhardt, Berzon, Bybee